### In re ROBERT E. DERECKTOR OF RHODE ISLAND, INC., d/b/a Derecktor Shipyard, Debtor.

#### Bankruptcy No. 92–10015.

United States Bankruptcy Court, D. Rhode Island.

June 18, 1992.

See also 137 B.R. 95.

Allan M. Shine, Gregory Hamilton, Providence, R.I., for debtor.

Jason D. Monzack, Cranston, R.I., for Creditors' Committee.

Charles L. Glerum, Boston, Mass., for Federal Deposit Ins. Corp.

Robert D. Wieck, Peter J. Brockman, Providence, R.I., for Paramax Systems Corp.

John Allen, Providence, R.I., for Rhode Island Port Authority.

### ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on June 1, 1992 on the objection of Paramax Systems Corporation, an unsecured creditor, to certain liens on the so-called Army "Tugboat Contract." The contract had been awarded to the Debtor in 1988 by the Naval Sea Systems Command on behalf of the Department of the Navy. The liens in question are asserted by the Federal Deposit Insurance Corporation as receiver for Bank of New England and New Bank of New England (the FDIC). Paramax is joined in its objection by the Unsecured Creditors' Committee.

The instant objection involves language in the Court's April 3, 1992 Amendment to Cash Collateral Order, which at paragraph 8 provided:

> The FDIC is deemed to hold a valid, enforceable and perfected lien on all pre-Petition assets of the Debtor, including Dry Docks I, II and III and so-called tug boat contract and proceeds thereof,

which liens secure payment of the Debtor's obligations to the FDIC, including obligations pursuant to the Debtor's $2,500,000 Note dated December 21, 1988 and Debtor's $6,500,000 Note dated October 23, 1987, except that Dry Dock III secures only the $6,500,000 Note, *unless objection to the validity, enforceability and/or perfection of any such lien shall have been filed by the Creditors' Committee or any creditor on or before April 22, 1992 or such further time as may be allowed by the Court* upon Motion, ... which Motion the FDIC and RIPA reserve[ ] their right to oppose. *In re Robert E. Derecktor of Rhode Island, Inc.,* BK No. 92–10015, slip op. at 4 (Bankr.D.R.I. April 3, 1992) (emphasis added).

Initially, Paramax advanced two reasons in support of its objection to FDIC's secured position. The first is that Floating Dry Dock III is not a "vessel" for purposes of the Ship's Mortgage Act, and that since no fixture filing had been made on the property, its lien thereon was unperfected. Apparently now satisfied with the filings on record, Paramax withdraws that objection.

However, Paramax still presses its second objection to FDIC's secured position, which argument runs essentially as follows: the FDIC has failed to perfect its security interest in the Tugboat Contract proceeds by its failure to comply formally with the requirements of the federal Assignment of Claims Act (the Act). 31 U.S.C. § 3727; 41 U.S.C. § 15.

In opposition, FDIC argues that the Assignment of Claims Act addresses one's right to direct payment from the federal government, not the perfection or validity of security interests. *See In re Topgallant Lines, Inc.,* 125 B.R. 682, 689–90 (Bankr.S.D.Ga.1991) (citing *King v. Gilbert,* 569 F.2d 398 (5th Cir.1978) (recognizing that as between private parties, noncompliance with the Act does not affect assignment)); *Matter of Palmetto Pump & Irrigation, Inc.,* 81 B.R. 109, 112 (Bankr. M.D.Fla.1987) (the Act was designed to protect the government and hence has no

bearing upon the contractual rights of nongovernmental entities, in the absence of governmental intervention). The purpose of the Act is to protect the federal government from paying multiple claims and to discourage speculators from purchasing and aggregating potential claims against the government. Its focus is not on the perfection of liens and security interests, but rather the establishment of procedural requirements of assignees planning to assert claims against the government. In the present case, with FDIC's lien valid in all other respects, the Act imposes no additional requirements in order to achieve or to preserve said validity. We see no basis to distinguish the present scenario from the general rule (that compliance with the Act is unnecessary) where the contract remains uncompleted and the government retains an interest. *See Topgallant,* 125 B.R. at 691 (a perfected UCC security interest under state law remained valid despite noncompliance with the Act; to suggest otherwise "is absurd"). Paramax has cited no authority for its position, and we are satisfied to be guided by those decisions which have dealt with the issue.

Moreover, there is authority for the proposition that because the Act is designed "purely for the protection of the government," arguments involving alleged noncompliance may not be asserted by private parties. *See United States v. Certain Space in Syracuse, New York,* 320 F.Supp. 491, 496 (D.C.N.Y.1969), *aff'd,* 435 F.2d 872 (2d Cir.1970), *cert. denied,* 402 U.S. 908, 91 S.Ct. 1381, 28 L.Ed.2d 649 (1971); *Mayo v. Pioneer Bank and Trust Co.,* 168 F.Supp. 503, 518 (W.D.La.1958).

In this case, the Assistant U.S. Attorney has closely monitored the proceedings for the Department of the Navy. In her objection to the amended cash collateral order, the U.S. Attorney clarified the Navy's position that the liens granted to the FDIC (and the Rhode Island Port Authority (RIPA)) are subordinate to the government's interest in certain property acquired by the Debtor for the Tugboat Contract, and that the Contract may not be assigned without the express consent of the Navy. Other-

wise, the Navy "does not object to the Court's [April 3, 1992 Order] to the extent it grants the FDIC and RIPA a lien against payments due, or claims arising from, the tug boat contract." (United States' Memo. in Support of Objection to Amendment to Cash Collateral Order at 10 n. 4 (April 22, 1992)).

Based upon our review of the statutory scheme and of the cases cited in the memoranda and supplemental memoranda, we reject Paramax' argument that compliance *vel non* with the Assignment of Claims Act affects the perfection and validity of the FDIC's security interest in the proceeds of the assignment of the Tugboat Contract. Accordingly, the objections of Paramax and the Creditors' Committee are overruled.

As a result of this Order and no other objection having been filed, we conclude that FDIC has a valid, perfected, and enforceable lien on all pre-petition assets of the Debtor as set forth in paragraph 8 of the Court's April 3, 1992 amended order.